THE PEOPLE OF THE STATE OF NEW YORK ex rel. NEW YORK
STOCK EXCHANGE BUILDING COMPANY, Appellant, Respondent,
*v.* JACOB A. CANTOR and Others, Constituting the Board of
Taxes and Assessments of the City of New York, Respondents,
Appellants. (Taxes of 1921.)

First Department, June 24, 1927.

**Taxation — assessment — contention by relator that character of building
is such as to render it valueless and that assessment should be reduced
is not sustained — finding that land unimproved was overassessed
contrary to evidence — improvement added to value of land — defend-
'ant's contention that under Greater New York Charter, § 889, assess-
ment must not be higher than actual market value cannot be sus-
tained — Tax Law, § 6, requires assessment at full value — error for
court to consider assessment of unimproved land only — total assess-
ment alone can be reviewed under Tax Law, § 21, subd. 3 — error to
exclude report of referee and order of confirmation in proceeding to
authorize estate to lease adjoining property to relator.**

The relator's assessment on the New York Stock Exchange building and land
was reduced by the court below in certiorari proceedings. The relator contends
that the building on the land actually reduced the value of the unimproved
land in that the building could not be used for any other purpose than as a
stock exchange and, therefore, if the property were sold it would be necessary
to tear down the building at an expense which would make the property of less
value than it would be if no building were on the land. This contention cannot
be sustained.

It was error for the court to reduce the assessment on the land unimproved to
$6,850,000, since relator's own witnesses testified that the land unimproved
was worth $7,500,000 and the witnesses for the defendant testified that it was
worth between $8,100,000 and $8,360,000. The assessment as fixed by the
assessors of the land unimproved at $7,750,000 is sustained.

Section 889 of the Greater New York Charter makes it the duty of the assessors
to assess the property at its' actual market value." This section cannot be
relied upon as supporting the relator's contention that the property with the
building thereon is worth less than the land unimproved, for section 6 of the
Tax Law distinctly provides that the assessment must be at the full value of
the real property, and the two statutes must be read and construed together.
The fact that the New York Stock Exchange has no ascertainable market value
does not permit the relator to escape taxation.

Under all the circumstances, the assessors have fixed a fair value on the building
as well as on the land unimproved.

Furthermore, under subdivision 3 of section 21 of the Tax Law, only the total
assessment of land and building can be reviewed and, therefore, the Special
Term was in error in disregarding the evidence as to the total value of the land
and improvements and in directing a reduction solely because it was satisfied
that the land unimproved was overvalued. The court should have found that
the total assessment was too great.

It was error to exclude the report of a referee and the order of confirmation in a
proceeding to authorize an estate to lease adjoining property to the relator.

13

First Department, June, 1927.                    [Vol. 221

APPEAL by the defendants, Jacob A. Cantor and others, from a final order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 6th day of May, 1926, reducing the assessment of relator's real property from $9,800,000 to $8,900,000.

Appeal by the relator, New York Stock Exchange Building Company, from said order in so far as it denies relator's application to reduce the assessment to the sum of $6,200,000.

*Samuel P. Gilman* of counsel [*William F. Unger* and *Roland L. Redmond* with him on the brief; *Carter, Ledyard & Milburn*, attorneys], for the relator.

*William H. King* of counsel [*Eugene Fay* with him on the brief; *George P. Nicholson, Corporation Counsel*], for the defendants.

FINCH, J.   This appeal from an order in certiorari proceedings brings up for review a reduction in the real property assessment for the year 1921 from $9,800,000 to $8,900,000 (consisting of a reduction in the value of the land as unimproved from $7,750,000 to $6,850,000) upon lot 19, in section 1, block 23, borough of Manhattan, being the property known as the New York Stock Exchange. The relator appeals because the building was held to add any value at all to the land as unimproved, and because the assessment of the land as unimproved was not further reduced to $6,200,000.

The defendants, constituting the board of taxes and assessments of the city of New York, cross-appeal because of the reduction of the assessment, contending that the assessments of $7,750,000 as unimproved and $9,800,000 as improved should be confirmed.

The facts necessary to show the reasons for the decision are briefly as follows: The land affected is located on the southerly side of Wall street, running from Broad street to New street, and contains 31,473 square feet. Upon the southerly portion of this land there was erected a building equal in height to eight stories and used exclusively by the New York Stock Exchange Association. This building was adapted to the needs of the said association and its members. Upon the northerly portion of this land there was in process of erection an extension to said building, but no value therefor was properly included in the assessment, as the building was in course of construction. The assessment of the land and of the completed building upon the southerly portion thereof was tentatively fixed by the defendants for the year 1921 as follows: Unimproved, $7,750,000; improved, $9,800,000. The valuation included for the building on the southerly portion of the land was thus fixed at $2,050,000. Within the proper time the relator filed with the defendants a petition duly verified by its

president, wherein the relator objected to the valuation of both land and building, and stated that " the full and true value of said property for the year 1921 was $7,500,000  *  *  *  and the amount for which it should have been assessed." The printed form of application required the relator to furnish the defendants with the costs of the improvements erected on the land, but the relator did not furnish such information as required. After a hearing, the assessment was confirmed and the relator obtained a writ of certiorari to review the assessment. The relator urges that the building does not enhance the value of the land except " as a tear-down proposition  *  *  *  and to that extent constitutes an encumbrance which diminishes the value of the land to a greater extent than such value is increased by the construction cost of the building," because any purchaser of the property on the tax day, namely, October 1, 1920, would have been forced to tear down the building and erect one of a different character, since the building was only adapted to the one use, namely, that of the New York Stock Exchange. In support of its claim, the relator called three well-known real estate men as witnesses, two of whom testified that the land unimproved was of the value of $6,000,000, and the third that it was of the value of $6,144,199, and all three that the land with the improvements was worth no more. The defendants, on the other hand, also called three well-known experts, who testified that the value of the land unimproved was $8,360,000, $8,300,000 and $8,100,000, respectively.

The trial court found that the building was constructed between the years 1900 and 1903 and cost $3,250,000. There was evidence which was not met that on October 1, 1920, the fair and reasonable cost of reproduction of said building, exclusive of the portions demolished in the erection of the addition to said building, was $4,816,000. The defendants sought to introduce evidence of depreciation, so as to arrive at the value of the improvement by the method of showing cost, less depreciation, but this evidence was excluded and an exception given to the defendants upon the objection of the relator.

We will first take up the value of the land as unimproved. The value as sworn to by the relator as the full and true value on the tax day and as the value at which the premises should be assessed was $7,500,000. As the relator contends that the improvements add nothing to the value of the land, the relator has thus in effect sworn to the value of the land unimproved as $7,500,000. The assessors have valued the land unimproved at $7,750,000. As the relator has thus sworn that the value of the land unimproved was $7,500,000, the learned Special Term was not justified in fixing

the same at $6,850,000.   Moreover, the experts for the defendants fixed the value of the land unimproved between $8,100,000 and $8,360,000.   Preponderating evidence in the record sustains the valuation as fixed by the assessors.   The learned trial court was in error, therefore, when it fixed the value of the land unimproved at less than the sum of $7,750,000.

Taking up now the question whether the improvements add anything to the value of the land, the Special Term has found that the improvements did add to the value of the land in the amount fixed by the assessors, namely, $2,050,000.   The Special Term has also found that the building was an adequate improvement.   There is no suggestion of inadequacy of the structure or mislocation.   On the contrary, it is peculiarly adapted to the purposes of its use and in the best possible situation in the financial district.   The relator contends that the building did not enhance the value of the land because under section 889 of the Greater New York Charter (as amd. by Laws of 1911, chap. 455) it was the duty of the defendants to assess this value year by year at its actual market value, no more and no less, and that as this building can only be adequately used by the New York Stock Exchange and not by any one else, not even the other exchanges, therefore, there is no actual market value, and hence the building adds nothing to the value of the land.   A complete answer to this contention, however, is that section 6 of the Tax Law (as amd. by Laws of 1914, chap. 277) provides; " All real and personal property subject to taxation shall be assessed at the full value thereof  *  *  *." The relator makes no reference to this provision of the Tax Law, but relies solely on the language of section 889 of the Greater New York Charter, requiring deputy tax commissioners to assess all taxable property and to furnish to the board of taxes and assessments, " the sum for which, in their judgment, each separately assessed parcel of real estate under ordinary circumstances would sell."   Under the principle which requires that statutes *in pari materia* must be read together (*People ex rel. Manhattan Railway Co.* v. *Barker*, 146 N. Y. 304, 312), real property must be assessed at its full value whether or not there is an ascertainable market value.   As was said in *People ex rel. Waclark Realty Co.* v. *O'Donnel* (affd., 130 App. Div. 880; affd., 196 N. Y. 521), " the provisions of this section of the Charter [Section 889, providing for assessment at an amount for which real property under ordinary circumstances would sell] does not change the general tax law of the State that real property shall be assessed at its full value.   I do not understand that under the provisions of the Charter, simply because the property cannot be sold under ordinary circumstances it is,

therefore, to escape taxation. (See opinion of Mr. Justice LEVEN-TRITT in *People ex rel. Consolidated Gas Co.* v. *Wells* and others, 54 Misc. 322.) It seems to me that if the building is of such a character that it cannot be sold except under extraordinary circumstances, it is still the duty of the Deputy Tax Commissioner in the first instance in ascertaining the value of the property and of the Commissioners of Taxes in imposing the assessment, to determine its actual value from such material as the circumstances of the case afford (*People ex rel. Manhattan Railway Co.* v. *Barker*, 146 N. Y. 304, 312)."

The same principles were likewise applied by the court in other cases, namely, *People ex rel. Union Club* v. *O'Donnel* (126 App. Div. 916), where the cost was resorted to in order to fix the full value, it appearing that the club building had a small commercial value, but nothing like its real value. Also in *People ex rel. D., L. & W. R. R. Co.* v. *Clapp* (152 N. Y. 490), where the headnote says: " The rule to be ordinarily applied in assessing the value of the real estate of a railroad company for local taxation is the cost of replacing the portion of the road and appurtenances situated within the jurisdiction of the assessors, in the condition in which they are found by the assessors at the time of making the assessment."

In such a case the market value would be difficult, if not impossible, to find, and yet the property is not permitted for this reason to escape taxation. The same question has been met in the same way in other States. In *Massachusetts General Hospital* v. *Inhabitants of Belmont* (233 Mass. 190) the taxing statute required assessments at " fair cash value." In such a case the court recognized that original cost, replacement cost and production power were all legitimate elements to be considered. All these cases follow the well-known fundamental principle that where the detail of amount is to be ascertained, such as amount of damage or amount of value, the true amount in question and the method of its ascertainment is that which appears as possible and practicable under the circumstances of the case. If here we take the reproduction cost of the building on the tax day, namely, October 1, 1920, and allow for depreciation we reach the result that the value of the building was at least the amount for which the tax commissioners have assessed the building, namely, $2,050,000. (*People ex rel. New York Central R. R. Co.* v. *State Tax Commission*, 206 App. Div. 558; affd., 237 N. Y. 612.) Furthermore, only the total assessment of land and building can be reviewed. The learned Special Term, therefore, was in error in disregarding the evidence as to the total value of the land and improvements and in directing a reduction of the assessment solely because the court was satisfied

that the land unimproved was overvalued by the defendants in making the assessment. What the court should have found was that the total assessment was too great. Subdivision 3 of section 21 of the Tax Law (added by Laws of 1914, chap. 277, as amd. by Laws of 1916, chap. 323) provides: " In all cities there shall be an additional column in the assessment roll before the column in which is set down the value of real property, and in such additional column there shall be set down the value of the land exclusive of the buildings thereon. The total assessment only can be reviewed." Unless the total assessment is too large, the person assessed cannot be said to be aggrieved. Looked at, therefore, from the viewpoint of the total assessment, we find that the relator is in no sense aggrieved.

There was error also in excluding the report of the referee and the order of confirmation in the proceeding to authorize the estate of Matthew Wilkes to lease the southwest corner of Broad and Wall streets to the relator herein. This concerned a portion of the land itself and was very material to the inquiry. In *Hoffman* v. *Conner* (76 N. Y. 121, 124) the court said: " Upon the trial plaintiff, for the purpose of proving the value of the property, was asked by her counsel, what she paid for it. This was objected to by the defendant as incompetent, and the objection was overruled. It has been held that what a party paid for property, is some evidence of its value. (*Campbell* v. *Woodworth*, 20 N. Y. 499; *Wells* v. *Kelsey*, 37 id. 143; *Beach* v. *Raritan and Del. Bay R. R. Co.*, Id. 457.) " Also, in *Latimer* v. *Burrows* (163 N. Y. 7, 9) the court said: " ' When the property has a market value at the time and place, which can be proved by witnesses who can then and there speak of it, it must be proved by such witnesses.' (*Jones* v. *Morgan*, 90 N. Y. 4, 10.) To this general rule as to the manner of establishing market value, there are some exceptions. Thus, it has been held that the price which was previously paid for property (*Hoffman* v. *Conner*, 76 N. Y. 121, 124), or for which it was sold at a public auction (*Campbell* v. *Woodworth*, 20 N. Y. 499), or the amount subsequently obtained on a private sale between other parties (*Parmenter* v. *Fitzpatrick*, 135 N. Y. 193), is some evidence of value."

With this record before this court, however, a new trial seems unnecessary.

The order appealed from should be reversed, with ten dollars costs and disbursements to the defendants, the writ of certiorari dismissed, and the assessment confirmed, with costs.

Merrell, McAvoy, Martin and Proskauer, JJ., concur.

Order reversed, with ten dollars costs and disbursements to the defendants, the writ of certiorari dismissed, and the assessment confirmed, with costs. Settle order on notice.