116 N.J. Super. 9 (1970)
280 A.2d 833
TEXAS EASTERN TRANSMISSION CORPORATION, PETITIONER-APPELLANT,
v.
BOROUGH OF CARTERET, TOWNSHIP OF EDISON, TOWNSHIP OF PISCATAWAY, TOWNSHIP OF WOODBRIDGE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 22, 1970.
Decided October 15, 1970.
*11 Before Judges KILKENNY, HALPERN and LANE.
Mr. Robert J. Del Tufo argued the cause for appellant (Messrs. Jeffers and Dillon, attorneys).
Mr. Sam Weiss argued the cause for respondents.
Mr. John M. Kolibas argued the cause for respondent Borough of Carteret.
Mr. Roland A. Winter argued the cause for respondent Township of Edison.
Mr. Joseph Stevens, attorney for respondent Township of Piscataway.
Mr. Isadore Rosenblum argued the cause for respondent Township of Woodbridge.
Mr. Herbert K. Glickman, Deputy Attorney General, filed a statement in lieu of brief (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney for Division of Tax Appeals).
The opinion of the court was delivered by KILKENNY, P.J.A.D.
Petitioner appeals from final judgments of the State Division of Tax Appeals, affirming determinations *12 of the Middlesex County Board of Taxation, upholding the 1967 assessed valuations fixed for local taxation by the municipal authorities of the Townships of Edison, Piscataway, Woodbridge and Borough of Carteret.
The property consists of pipelines of varying dimensions owned by Texas Eastern, to the extent of their footage in the respective municipalities. Some of these were used in combination with continuances thereof for the transmission of natural gas from Texas to the New York metropolitan area. Other pipelines of Texas Eastern in these New Jersey municipalities were "idle," not being in active use.
No useful purpose would be served by a recital of the footage and dimensions of each particular kind of pipeline in each municipality; or when the pipelines were built; or the respective municipal assessed valuations. A common formula, known as the "Middlesex County Formula," because it had been approved and recommended for common use by the Middlesex County Assessors Association, had been employed by the respective local assessors in calculating values. The propriety and the correctness in the application of that formula are the main issues on this appeal.
Two local assessors, one from South Plainfield and the other from South Brunswick, testified as to the "Middlesex County Formula." All the lines were appraised at their "historical cost," meaning the cost when the lines were built. The "per foot cost" was determined by dividing the cost of the "spread" of the pipeline in New Jersey by the footage in the particular spread. There was deducted from cost 15% as a single, non-recurring depreciation factor. This was done to stabilize the annual valuations and thus avoid the need to recalculate true value from year to year. By way of exception, a 20% deduction in the historical cost was made in the case of the 20-inch pipeline.
Applying this formula to the various lines, the 36-inch line's cost was fixed by the local assessors at $46 a foot and, with a 15% depreciation, true value per foot was determined to be $39.10. The 24-inch pipeline's cost was set at *13 $27 a foot and depreciated 15% to make it $22.95. The 20-inch line was valued at $16 a foot and applying the 20% depreciation factor was reduced to $12.80. The 12-inch line was valued at $10 a foot and then reduced 15% to $8.50. The 10-inch line, valued at $8 a foot, by similar deduction of 15%, became $6.80. The 8-inch line, valued at $6 a foot, was reduced by 15% to $5.10.
The idle 12-inch line was valued at $4.20 a foot since it was idle. The idle 10-inch line was valued at $3.40 a foot and the idle 8-inch line at $2.55. This represented 50% of the value of the active lines. The reason why these idle lines have not been in service is that the so-called "Big and Little Inch" pipelines were built for the transmission of oil from the Texas fields to New Jersey refineries during World War II, but thereafter they ceased to be useful for the transmission of oil to customers, because Texas Eastern does not have customers for oil. The company uses its pipelines for the transmission of natural gas to different customers. It admittedly owns the "idle" lines.
By multiplying the per foot valuation of each kind of pipeline, determined as above, by the footage of each kind of pipeline in a particular municipality, the respective local assessors calculated the "true value" of the pipelines for local tax purposes.
All municipalities in Middlesex County are supposed to assess at a ratio of 50% of true value, according to a County Board directive. Relying upon that directive, each of the respondent municipalities fixed the "assessed value" of Texas Eastern's pipelines at 50% of "true value," as calculated above. Texas Eastern had been so billed and had paid the taxes so determined.
Following a hearing before Judge Gotshalk in the State Division on June 2, 1969, the judge determined:
There was not before me evidence of the cost of these lines from which I could make a positive finding of value * * *. (Emphasis added).
*14 By reason thereof, the judge felt "compelled to affirm the finding of the County Board as to true value * * *." Accordingly, Texas Eastern's appeals were dismissed and the County Board's valuations were affirmed by judgments of the State Division entered on December 5, 1969.

I
"The settled rule is that there is a presumption that an assessment made by the proper authority is correct and the burden of proof is on the taxpayer to show otherwise. * * * the presumption stands until sufficient competent evidence is adduced to prove a true valuation different from the assessment. Such evidence must be definite, positive and certain in quality and quantity to overcome the presumption." Aetna Life Insurance Co. v. City of Newark, 10 N.J. 99, 105 (1952).
On appeal to the county board, "there exists a presumption in favor of the quantum of the tax assessment made by the local taxing authority and the burden is on the taxpayer to prove otherwise. * * * It has also been held that a similar presumption attaches to the judgment of the county board on the appeal to the Division of Tax Appeals." Riverview Gardens Section One v. North Arlington Borough, 9 N.J. 167, 174-175 (1952).
As noted above, the taxpayer's appeals to the Division from the judgments of the County Board were dismissed on the ground that there was no evidence before the Division of the "cost" of these lines from which a finding of value could be made. On the contrary, the "historical cost" of the pipelines constituted part of the very formula applied by the local assessors in calculating "true value." We have set forth above the per foot cost of each kind of pipe, as used by the local assessors in deciding first "true value" and thereafter diminishing it by the 50% county ratio to arrive at "assessed value." The testimony of witnesses, Prothro, Linger and Renk, produced by Texas Eastern, and the inventories *15 and tax bills introduced as petitioner's Exhibits P-2, P-3, P-4 and P-5 established without contradiction both the details of the "Middlesex County Formula" and their use in computing the contested assessments. Judge Gotshalk also made specific factual findings as to the "cost" figures in the early part of his opinion, as set forth herein supra.
Presuming the correctness of these "cost" figures used by the local assessors in their computations and the correctness of the footage of each kind of pipe in their respective municipalities, we find that the depreciation percentage, rather than "cost," presented the real basic issue. The local assessors reduced the "cost" figures by 15% as to all pipelines, except the 20-inch lines, and depreciated the cost of those lines by 20% to arrive at "true value." This was in accordance with the "Middlesex County Formula," recommended by the unofficial Middlesex County Assessors Association.
On the contrary, as shown by the evidence, the New Jersey Assessors Association, also an unofficial body, had recommended on a state-wide basis a standard depreciation deduction from historical cost of 45%, continuing the resultant value from year to year. So, too, there was proof that the Federal Power Commission, which exercises control over these interstate natural gas transmission companies, had limited to 3% the annual depreciation deduction, as opposed to the constant 15% or 45% recommended by the County and State associations, respectively.
Moreover, in an analogous set of appeals by Transcontinental Gas Pipe Line Corporation, involving similar pipelines in these same respondent municipalities and others in New Jersey, heard by Judge Gotshalk in the State Division on March 3, 1969, prior to the Division's hearing the instant appeals, the Federal Power Commission's 3% depreciation was used as a factor, inter alia, in determining those appeals. As noted above, the Transcontinental judgments were entered in the Division on August 28, 1969, more than *16 three months before entry of the December 5, 1969 judgments in this Texas Eastern case.
We heard contemporaneously the municipalities' appeals in the Transcontinental case and the pipeline company's cross-appeal (Docket No. A-190-69) and the instant appeal by Texas Eastern. We feel that the same standards ought to be applied to both taxpayers by these same municipalities, common issues being involved.
The pipeline company taxpayer and the municipalities agree, as does the State Division, that the ordinary rule for determining true value for purposes of taxation is not applicable here. Judge Gotshalk recognized this when he said in his opinion, in referring to the great difficulties in assessing the value of pipelines, "our willing buyer and willing seller theory cannot be applied to a pipeline in New Jersey or in any particular municipality." He advocated that pipelines should be subject to State taxation, not local assessment, with money returned to the municipalities "in the same method as other utility taxes, such as Second Class Railroads are."
We agree that the ordinary theory of value, "what a willing buyer would pay a willing seller," is not applicable to mere segments of a pipeline which extends from Texas to New York. The application of an "historical cost" minus "depreciation" to arrive at "true value" is a reasonable approach. The parties seemingly agree. "Historical cost" is used because these utility companies, under regulation by the Federal Power Commission, are required to set up in their books the original investment cost as the basis for the limited percentage income thereon to which they are subjected. They may not increase that figure on their books, even though economic conditions may have brought about an increase in the value of things. At the same time, these utility companies are limited by federal regulations to an annual depreciation of 3% in the historical cost figure.
The State Division applied that 3% depreciation factor against historical cost in the Transcontinental appeal. To *17 that extent, we are in accord and would apply that formula basically to the facts herein. We would, however, as hereinafter noted, limit the period of depreciation.

II
We find, too, that assessing the "idle" lines at 50% of the value of the lines in use is not unreasonable. The taxpayer urges that the assessment should be only nominal. We do not agree. The mere inutility of property does not justify making it tax-exempt, or almost so. A non-user of land or of structures and improvements thereon does not reduce the taxable value of the land or of the structures or improvements. An unoccupied home is none the less taxable. Taxpayers are wont to demolish structures on land to remove them from the tax rolls. Here, the pipeline company still has a potential use of the oil pipelines now idle. Lack of functional use has been recognized by the local assessors by the 50% deduction in value. We are not persuaded that a reduction to nominal value of the idle lines is required.

III
We do not subscribe to the State Division's use of a 25% "appreciation" in the cost, because of rising economic conditions, as was done in the Transcontinental case. These utility companies are limited by federal regulations to a fixed rate of income (6.50%) and that rate is based on "historic cost." So, too, the depreciation is limited by the F.P.C. to 3% of the same historic cost and is not based on any "appreciation" in the cost resulting from rising values. So restricted, it would be inconsistent and unfair to add a 25% appreciation factor in deciding true value for tax assessment purposes.

IV
The 15% depreciation constant deduction from cost, recommended by the Middlesex County Assessors Association, *18 and the 45% deduction recommended by the State Association, are not devoid of all merit. They would produce a single value, usable from year to year, without the need for annual change to take care of ever-increasing depreciation and obsolescence. Obviously, developing technical improvements in the quality, size and functioning of these pipelines will render the present pipelines obsolete. They will probably be replaced by newer and better pipes, longer lasting, less subject to corrosion and the like.
The 3% depreciation fixed by federal regulation for the existing pipelines is seemingly based on an approximate 30-year functional life-span. Apportioning depreciation over an entire life-span at the inception of the period, for once and for all, would require a depreciation of approximately 40 to 50%, as testified to by the taxpayer's witness, Broley E. Travis, a consulting valuation engineer since 1962. This simply means that you apply the depreciation percentage at the approximate median point of the functional life and apply it from beginning to end. The net result balances the over-percentage for half of the years against the underpercentage for the other half of the years. It would produce a common percentage throughout the life-span, as contrasted with the ever-increasing percentage, where a figure of 3% for the first year becomes higher with each passing year. We find the Division's use of the 3% annual and ever-increasing annual percentage of depreciation, authorized by the Federal Power Commission, a common method employed in business, reasonable, consistent with everyday realities and valid.

V
We next consider the taxpayer's claim of discrimination. Judge Gotshalk found that Piscataway and Carteret, for the year 1967, were adhering to the 50% county ratio. As to Edison, its ratio was 41% and he applied it in the Transcontinental case. As to Woodbridge, the judge found a 37% ratio should be applied. Yet, he doubted his need of application *19 of those ratios herein only because "there was no finding by me of value."
Yet, the "values" fixed by the local assessors and approved by the County Board were adopted by the State Division. Without applying the true ratios of 41% and 37% applied respectively by Edison and Woodbridge to other properties in their townships, discrimination was effected against Texas Eastern. This is especially obvious when we consider that the State Division applied those lower ratios to the true values of Transcontinental's pipelines, while upholding the higher 50% of true value as to Texas Eastern's pipelines.
The municipalities argue that the taxpayer did not adequately prove the common level or average ratio. The judge's finding of the reduced ratios in the Transcontinental case should be equally applied to Texas Eastern. Fairness mandates that the ratio applied to Texas Eastern should not be higher than that applied to the other taxpayers of these two municipalities.

VI
One difficulty with the 3% depreciation method lies in the potentiality that, unless checked at some point, the cost figure minus the ever-increasing depreciation figure can become zero. In Transcontinental, depreciation at 3% over a 16-year period has reached 48%. It would be unrealistic to continue this item unlimitedly to a point where theoretically the pipelines would have no value and would, in effect, be tax exempt.
Our concern is with the 1967 valuations. The issue of allowing further depreciation beyond the 48% figure has not been determined or briefed on this appeal. Accordingly, we make no determination as to the point when further depreciation should stop. As suggested by the State Division, the valuation of these pipelines should be considered by the Legislature and a suitable state-wide formula enacted for *20 universal guidance throughout the State. We are in accord with this suggestion.

CONCLUSION
The State Division's affirmance of the County Board's judgments is reversed. The local assessments for the purpose of taxing Texas Eastern pipelines will be calculated by taking the historical cost of each kind of pipeline, as per the figures noted above; then deducting 3% per annum cumulatively but not exceeding 48% pending clarifying legislation or a more suitable record than that before us, and after that, applying the particular municipal ratio used in assessing other properties in the municipality. "Idle" pipelines will be assessed at 50% of active pipelines. The 25% "appreciation" factor will not be added.
The matter is remanded to the State Division for a recalculation of the 1967 assessed valuations consistent with this opinion.