115 N.J. Super. 593 (1970)
280 A.2d 689
TRANSCONTINENTAL GAS PIPE LINE CORPORATION, PETITIONER-RESPONDENT CROSS-APPELLANT,
v.
TOWNSHIP OF BERNARDS, ET AL., RESPONDENTS, AND BOROUGH OF CARTERET, TOWNSHIP OF EDISON AND TOWNSHIP OF WOODBRIDGE, RESPONDENTS-APPELLANTS CROSS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 22, 1970.
Decided October 15, 1970.
*594 Before Judges KILKENNY, HALPERN and LANE.
Mr. Sam Weiss argued the cause for appellants.
Mr. John M. Kolibas argued the cause for appellant Borough of Carteret.
Mr. Roland A. Winter argued the cause for appellant Township of Edison.
*595 Mr. Isadore Rosenblum argued the cause for appellant Township of Woodbridge.
Mr. Angelo A. Mastrangelo argued the cause for respondent, cross-appellant (Messrs. Fox. Schackner, Neagle & Mastrangelo, attorneys).
Mr. Herbert K. Glickman, Deputy Attorney General, filed a statement in lieu of brief (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
The opinion of the court was delivered by KILKENNY, P.J.A.D.
These are consolidated appeals by three Middlesex County municipalities from judgments of the State Division of Tax Appeals, fixing the 1967 assessed valuations of certain transmission pipelines owned by Transcontinental Pipe Line Corp. to the extent of their respective footages in each of the appealing municipalities. There is a cross-appeal by Transcontinental.
In determining assessed valuations for these pipelines, the municipal assessors used the so-called "Middlesex County Formula." This formula had been adopted and recommended for use in valuing pipelines by the Middlesex County Assessors Association, an unofficial association of municipal assessors. It consisted in establishing first, the "cost" of the pipelines, according to their varying dimensions; secondly, deducting therefrom a non-cumulative 15% (20% for 20-inch pipe) for depreciation to arrive at "true value," and third, applying a uniform county-wide ratio of 50% to establish "assessed value." ("Idle" pipelines, not in active use, were given a true value of only 50% of that ascribed to pipelines in active use.) Once this value was determined, it remained constant in later years, despite ever-increasing depreciation and obsolescence, or increases in economic values.
*596 We note at this point that the New Jersey Assessors Association, also an unofficial body, had adopted and recommended for use in the valuation of transmission pipelines a formula whereby "cost" would be diminished by 45% as a constant factor of depreciation, as opposed to the 15% used under the "Middlesex County Formula." These pipelines run through New Jersey on their way from Texas and the south to the New York metropolitan area.
The State Division did not accept either the 15% or the 45% straight non-cumulative depreciation deduction from historical cost to arrive at true value. Instead, it used a cumulative 3% annual deduction from cost for depreciation. The taxpayer was limited by the controlling Federal Power Commission to this 3% figure. The State Division found, for example, that in 1967 pipelines were entitled to 3% for 16 years, resulting in a 48% deduction for depreciation. But it then added an "appreciation" factor of 25% because of value increases over that same period.
In addition, the State Division found that Carteret was observing the 50% county ratio in assessing properties, but Woodbridge used a 37% ratio and Edison 41%. For this reason, it concluded that Woodbridge and Edison were discriminating against the pipeline company in using against it a 50% ratio of true value in fixing the assessed valuation, while other taxpayers were being assessed at the lower ratios of 41% and 37%.
The position of the municipalities on appeal is that there is a presumption of validity in the assessed valuations as fixed by the municipal assessors and affirmed by the County Board. They argue that the taxpayer did not sustain its burden on appeal of overcoming that presumption. The existence of such a presumption and the burden of proof in an appeal to the State Division may be conceded. See Aetna Life Insurance Co. v. City of Newark, 10 N.J. 99, 105 (1952); Riverview Gardens Section 1 v. North Arlington Borough, 9 N.J. 167, 174-175 (1952). At the same time, the judgment of the State Division must be *597 presumed to be valid and correct. Anyone appealing therefrom has the burden of overcoming that presumption. Moreover, in an appeal from the final decision of any State administrative agency, appellate courts apply the "substantial evidence" rule. Atkinson v. Parsekian, 37 N.J. 143, 149 (1962).
The position of the pipeline company in its cross-appeal is that there was no legal justification for the State Division's adding a 25% "appreciation" factor in its arriving at "true value" by the normal "historical cost minus depreciation" approach.
Both sides agree that the value concept  "what a willing buyer would pay a willing seller"  is not applicable in valuing mere segments in a municipality of a natural gas pipeline which extends from the source of supply in Texas to the New York metropolitan area. We agree. So, too, it is conceded that the "capitalization of income" approach is not a feasible method. The value of these pipelines was not established herein by any such proof. So, only the cost minus depreciation method was employed in the instant case.
The municipalities contend that the "cost" of these pipelines was never established by the pipeline company. They maintain that, without proof of this basic fact, there was nothing upon which one could calculate depreciation and ultimately true value. The fallacy of this argument lies in the fact that the municipal assessors based their calculations on historical costs, evidenced by the taxpayer's inventories and demonstrated by tax bills paid by the taxpayer during prior years. See, Exhibits P-2, P-3, P-4 and P-5. Thus, there was a finding by the Division that 36-inch pipe cost per foot $46; the 24-inch pipe $27; the 20-inch pipe $16; the 12-inch $10; the 10-inch $8, and the 8-inch $6. The idle lines were reduced by 50%. The footage of each kind of pipe in each municipality was specified and has not been disputed. This was done as to "idle," as well as "active" lines.
*598 The real issue was what percentage should be deducted from historical cost for the factor of depreciation, including obsolescence. Should it be the straight 15% recommended by the Middlesex County Assessors Association? Or the higher 45% recommended by the New Jersey Assessors Association? Or the cumulative 3% depreciation to which the pipeline company was limited by the Federal Power Commission? The municipalities used the 15% non-cumulative depreciation factor. Their action was affirmed by the County Board. The State Division deemed the Federal Power Commission's 3% annual cumulative deduction for depreciation the most appropriate.
We defer to the expertise of the State Division as to this phase of the case. It comports with the policy of the federal regulatory agency. It is a customary practice in calculating a deduction for depreciation in income tax returns to divide the cost by the number of years in the functional life of the property involved and the quotient represents the annual percentage allowable for depreciation. Thus, if the functional life-span of these transmission pipes is 30 years, an annual cumulative deduction of 3% for depreciation is reasonable.
The State Division properly rejected the testimony of the expert witness for the municipalities who estimated a 75-year "physical" life-span for the pipelines and thereby figured a 1 1/3% annual depreciation. "Functional" life-span controls.
Accordingly, we find no basis for reversal in the State Division's use of 3%. It appears to be a more reasonable approach than the single 15% used by the municipal assessors, a figure far lower than the mean average.
We agree with the taxpayer that the addition of 25% for "appreciation" was not warranted. The utility company may not reflect any such increase in value on its books to enhance the quantum of its investment and thereby obtain a larger income under its federally regulated rate of return. It is "historical cost," i.e., the cost upon acquisition of the *599 pipelines, which controls. It would be unfair to limit depreciation to that original cost and to limit income on that same basis, while superadding a 25% "appreciation" factor for local tax valuation.
We agree with the State Division's finding of discrimination by the townships of Woodbridge and Edison. Transcontinental's assessed valuations in those municipalities were at 50% of true value, whereas other taxpayers were assessed at ratios of 37% and 41% respectively. These figures speak for themselves.
One difficulty with the 3% depreciation method lies in the potentiality that, unless checked at some point, the cost figure minus the ever-increasing depreciation figure can become zero. As to Transcontinental, depreciation at 3% over a 16-year period has reached 48%. It would be unrealistic to continue this item unlimitedly to a point where theoretically the pipelines would have no value and would, in effect, be tax exempt.
Our concern is with the 1967 valuations. The issue of allowing further depreciation beyond the 48% figure has not been determined or briefed on this appeal. Accordingly, we make no determination as to the point when further depreciation should stop. As suggested by the State Division, the valuation of these pipelines should be considered by the Legislature and a suitable state-wide formula enacted for universal guidance throughout the State. Determining "per foot cost" by dividing the cost of the "spread" in New Jersey by the footage in the spread is not, absent a showing of special circumstances, unreasonable.

CONCLUSION
The State Division's modification of the County Board's judgments is modified. The local assessments for the purpose of taxing Transcontinental pipelines will be calculated by taking the historical cost of each kind of pipeline, as per the figures noted above; then deducting 3% per annum *600 cumulatively but not exceeding 48% pending clarifying legislation or a more suitable record than that before us, and after that, applying the particular municipal ratio used in assessing other properties in the municipality. "Idle" pipelines will be assessed at 50% of active pipelines. The 25% "appreciation" factor will not be added.
The matter is remanded to the State Division for a recalculation of the 1967 assessed valuations consistent with this opinion.