PER CURIAM.
These appeals require us to again address the valuation of gas transmission pipelines for the purpose of local real property taxation, which was last before our courts in Transcontinental Gas Pipe Line Corp. v. Bernards Tp., 115 N.J.Super. 593, 280 A.2d 689 (App.Div.1970), aff’d o.b. 58 N.J. 585, 279 A.2d 674 (1971) (Transcontinental) and Texas Eastern Transmission Corp. v. Bor. of Carteret, 116 N.J.Super. 9, 280 A.2d 833 (App.Div.1970), aff’d o.b. 58 N.J. 585, 279 A.2d 674 (1971) (Texas Eastern).
*638 In Transcontinental and Texas Eastern, we reviewed decisions of the Division of Tax Appeals which held that the proper method of valuation of pipelines was historical cost, less a 3% annual deduction for depreciation, plus a “25% appreciation factor” to account for the increase in value since the pipelines were installed. The parties to those appeals agreed that the pipelines should be valued on the basis of historical cost. The only dispute was with respect to the Division’s calculations for “depreciation” and “appreciation.”
In affirming the 3% deduction for depreciation adopted by the Division, we said:
We defer to the expertise of the State Division as to this phase of the case. It comports with the policy of the federal regulatory agency. It is a customary practice in calculating a deduction for depreciation in income tax returns to divide the cost by the number of years in the functional life of the property involved and the quotient represents the annual percentage allowable for depreciation. Thus, if the functional life-span of these transmission pipes is 30 years, an annual cumulative deduction of 3% for depreciation is reasonable. [Transcontinental, supra, 115 N.J.Super. at 598, 280 A.2d 689] [1]
However, we expressed reservations concerning the appropriateness of continuing to apply a 3% depreciation factor to a point where the pipelines would have a negligible value for tax purposes:
One difficulty with the 3% depreciation method lies in the potentiality that, unless checked at some point, the cost figure minus the ever-increasing depreciation figure can become zero. As to Transcontinental, depreciation at 3% over a 16-year period has reached 48%. It would be unrealistic to continue this item unlimitedly to a point where theoretically the pipelines would have no value and would, in effect, be tax exempt. [Transcontinental, supra, 115 N.J.Super. at 599, 280 A.2d 689]
Since it had not been briefed, we determined that the Transcontinental and Texas Eastern appeals did not provide the appropriate occasion for resolution of this issue.
We also concluded that 25% “appreciation” factor applied by the Division in determining true value was not warranted. We said:
*639 We agree with the taxpayer that the addition of 25% for “appreciation” was not warranted. The utility company may not reflect any such increase in value on its books to enhance the quantum of its investment and thereby obtain a larger income under its federally regulated rate of return. It is “historical cost,” i.e., the cost upon acquisition of the pipelines, which controls. It would be unfair to limit depreciation to that original cost and to limit income on that same basis, while superadding a 25% “appreciation” factor for local tax valuation. [Transcontinental, supra, 115 N.J.Super. at 598-599, 280 A.2d 689]
Finally, we expressed the opinion that “... the valuation of these pipelines should be considered by the Legislature and a suitable state-wide formula enacted for universal guidance throughout the State.” Transcontinental, supra, 115 N.J.Super. at 599, 280 A.2d 689.
The Supreme Court affirmed the judgments in both Transcontinental and Texas Eastern based on our opinions. The Court also reemphasized the desirability of legislative consideration of the valuation for tax purposes of gas transmission pipelines:
As to valuation, we endorse the recommendation of the Appellate Division and of the State Division of Tax Appeals that there should be legislation to provide a suitable statewide formula for the assessment of this unique property. [ 58 N.J. at 586, 279 A.2d 674],
Subsequent to the decisions in Transcontinental and Texas Eastern, the Somerset County Board of Taxation sent a memorandum to all tax assessors in the county advising them to value gas transmission pipelines in accordance with the historical costs set forth in a schedule furnished by the County Board, less an annual depreciation deduction of 3% but not to exceed a total depreciation deduction of 48%. It appears that this method was used by defendant Bernards Township (Bernards) from the 1970s through 1982 to value the gas transmission pipelines of plaintiffs, Algonquin Gas Transmission Company (Algonquin) and Transcontinental Gas Pipe Line Corporation (Transcontinental), which run through the municipality. The resulting valuations were $569,700 for Algonquin and $657,000 for Transcontinental. However, Bernards conducted a complete revaluation of all property within the municipality, which became effective for the tax year 1983. If plaintiffs’ pipelines had continued to be valued in accordance with the methodology set *640 forth in the Somerset County Board of Taxation memorandum, plaintiffs’ tax liabilities for the pipelines would have been dramatically reduced after the revaluation. To avoid this consequence, Bernard’s assessor employed a new methodology to value the pipelines. He used replacement cost rather than historical cost as the basis for the valuations and he deducted 45% of this cost for depreciation. This methodology produced substantially increased valuations of plaintiffs’ pipelines, $1,698,880 for Algonquin and $1,959,200 for Transcontinental. However, plaintiffs’ tax liabilities remained substantially the same in 1983 as they had been in 1982.
Plaintiffs both appealed their 1983 assessments to the Somerset County Board of Taxation, which affirmed. Plaintiffs then filed separate actions in the Tax Court challenging these valuations, which were heard together although not consolidated.
Plaintiffs both presented experts who testified concerning the valuation of their pipelines in Bernards. These experts employed a number of different valuation methods. However, all of their methodologies had the common element of reflecting in one way or another that the interstate transmission of gas is a regulated utility and that the income which plaintiffs can realize from their pipelines is limited by the rates allowed by the Federal Energy Regulation Commission (FERC). Thus, the valuation of the property based on the “income method” used the income plaintiffs are permitted to earn by FERC. The valuation based on “market value” method reflected what another utility subject to rate regulation by FERC would pay. The valuations based on the “cost method” either used historical cost of the pipelines less depreciation, which is the method used by FERC to determine rate base, or reproduction cost less not only physical depreciation but also “economic obsolescence” resulting from rate regulation by FERC. Using these methodologies, Transcontinental’s expert valued its pipeline in Bernards at $216,000 and Algonquin’s expert valued its pipeline at $252,318.
*641 On the other hand, Bernards’ expert took the position that the valuation of plaintiffs’ pipelines should not be affected by the fact that they are used in a business in which rates are regulated. Accordingly, he valued the property in accordance with replacement cost, less physical depreciation, but without any further deduction for “economic obsolescence” reflective of the fact that plaintiffs are engaged in a regulated industry. He arrived at a valuation for the Transcontinental pipeline of $3,428,923 and for the Algonquin pipeline of $3,440,000.
Based on lengthy and thoughtful written opinions, Judge Lasser affirmed both the valuations of plaintiffs’ pipelines and the 1983 assessments.[2] He concluded the gas transmission pipelines cannot be properly valued using a market approach because they are special purpose property, for which there is no ready market. 7 N.J.Tax at 519-520. He also concluded that such property should not be valued by the income approach because that approach would use “the income generated by the regulated rates paid by consumers” for natural gas whereas “[t]he accepted method of valuation by the income approach is to capitalize the economic rent of the real property separate from the value of the business using the property.” 7 N.J.Tax at 521. Accordingly, he determined that the cost approach should be used in valuing the pipelines. 7 N.J.Tax at 523. Judge Lasser further determined that the property should be valued as if unregulated and that current reproduction cost rather than historical cost should be used. He pointed out that the cost approach standard of value for all other property is current cost, less depreciation, and concluded that it would be inconsistent with the principle of uniformity of assessment to value plaintiffs’ pipelines differently. 7 N.J.Tax at 523-527. He further pointed out that plaintiffs could pass through the costs of property taxes to consumers. Hence, the valuation of plaintiffs’ pipelines at current cost would not adversely effect *642 equity investors in the utilities but rather would be “... a means for consumers to pay their fair share of the local property taxes imposed on property which they use.” 7 N.J.Tax at 522. Therefore, Judge Lasser concluded that plaintiffs had not borne their burden of proving that the assessments on their property were incorrect.
Both plaintiffs have appealed from the judgments of the Tax Court upholding the assessments upon their properties for 1983. We consolidate the two appeals on our own motion.
We affirm the judgments of the Tax Court substantially for the reasons expressed by Judge Lasser in his two written opinions. However, further discussion is appropriate with respect to some of the arguments raised by plaintiffs on appeal.
Plaintiffs argue that the Tax Court’s decisions in the present cases are inconsistent with our decisions in Texas Eastern and Transcontinental. They correctly point out that in those cases we reversed the part of the Division of Tax Appeals’ decision which had permitted taxing districts to use an “appreciation factor” in valuing the pipelines in accordance with historical cost less depreciation. They argue that those decisions stand for the proposition that utility property, such as gas transmission pipelines, must be valued for tax purposes in the same manner as in determining rate base, that is, in accordance with historical cost less depreciation. However, our decisions in Texas Eastern and Transcontinental were not intended to establish immutable principles with respect to the valuation of utility property for purposes of local real property taxation. On the contrary, we expressed our dissatisfaction with all of the valuation methodologies advanced in those cases by calling upon the Legislature to consider enactment of a “suitable statewide formula ... for universal guidance throughout the State,” 115 N.J.Super. at 599, 280 A.2d 689, a recommendation endorsed by the Supreme Court in affirming our judgments.
The fact that Transcontinental and Texas Eastern did not establish a permanent rule with respect to the valuation for tax purposes of public utility property is clearly shown by Public *643 Service Electric & Gas Co. v. Woodbridge Tp., 139 N.J.Super. 1, 351 A.2d 799 (App.Div.1976), modified on other grounds 73 N.J. 474, 375 A.2d 1165 (1977). Public Service involved local real property taxation of certain buildings and other properties. Like plaintiffs pipelines, these properties were valued for rate-making purposes at historical cost less depreciation. However, in determining the value of this property for tax purposes the taxing district trended its historical cost upward to reflect increases in the cost of construction as of the assessment date. We rejected Public Service’s argument that this valuation was inconsistent with Transcontinental and Texas Eastern. After noting that Public Service’s property had been valued pursuant to a different statute than the one applicable in the gas pipeline cases, we went on to say:
... Local rates of taxation applied to valuations derived from distinctly different principles applicable only to property owned by [a] public utility will yield different levels of taxation for public utility property. Such procedures depart from the express statutory mandate and cannot therefore be tolerated. Using the same principles of valuing utility property as are used in valuing the property of other corporations and individuals is not unfair to the utility notwithstanding valuation on other principles for ratemaking purposes. A utility’s tax liability, by whatever method derived, will ultimately receive consideration by the P.U.C. in its rate determinations, thus passing on to the utility’s consumers the local tax liability imposed. Using a specially derived principle of valuation for local tax purposes would place the impact thereof on the local residents rather than the consumers, a result at variance with the purpose of the statutory requirement that utility property be taxed similarly to all other taxed property in the municipality. We therefore conclude that in these circumstances the Division was correct in applying general principles of valuation, uptrending original cost to reflect the current reproduction cost of the administration building when new. [ 139 N.J.Super. at 20-21, 351 A.2d 799]
The Tax Court properly concluded that the reasoning in Public Service is equally applicable in the present cases. See also Hackensack Water Co. v. Bor. of Old Tappan, 77 N.J. 208, 217-218, 390 A.2d 122 (1978), in which the court recognized that “the trending of costs” may be appropriate in valuing public utility property for tax purposes, although the record in that case did not provide an adequate basis for such trending.
We add that the conclusion that the present cost of public utility property may be considered in establishing its value for tax purposes, even though only historical cost is used in estab *644 lishing its rate base for ratemaking purposes, is supported by decisions in a number of other jurisdictions. See, e.g., Northern Natural Gas Co. v. Dwyer, 208 Kan. 337, 492 P.2d 147, 163-164 (Sup.Ct.1971), cert. den. 406 U.S. 967, 92 S.Ct. 2408, 32 L.Ed.2d 665 (1972); Tenneco, Inc. v. Town of Cazenovia, 104 A.D.2d 511, 479 N.Y.Supp.2d 587, 590 (App.Div.1984); Maine Consolidated Power Co. v. Inhabitants of Town of Farmington, 219 A.2d 748 (Me.Sup.Ct.1966); Town of Barnet v. New England Power Co., 130 Vt. 407, 296 A.2d 228 (Sup.Ct.1972); Public Service Co. v. New Hampton, 101 N.H. 142, 136 A.2d 591, 597-599 (Sup.Ct.1957); Consumers Power Co. v. Port Sheldon Tp., 91 Mich.App. 180, 283 N.W.2d 680, 684 (Ct.App. 1979). Although plaintiffs’ cite several Massachusetts cases as supportive of their position, even the Massachusetts cases recognize that “net book cost of [utility] property does not set an upper limit on the property’s value for local taxation purposes.” Boston Edison Co. v. Bd. of Assessors of Watertown, 387 Mass. 298, 439 N.E.2d 763, 766 (Sup.Ct.1982). In any event, the approach to the valuation of utility property found in the Massachusetts cases has not been followed in other states and is inconsistent with our decision in Public Service Electric & Gas Co. v. Woodbridge Tp., supra.
Plaintiffs also argue that the assessments of their properties violate their rights under the United States and New Jersey Constitutions. The only constitutional provision cited in the pretrial orders and in plaintiffs’ briefs filed in the Tax Court is Article 8, § 1, paragraph 1 of the New Jersey Constitution, which requires all real property to be assessed according to the same standard of value. Since all property in Bernards was valued at 100% of true value in 1983, there was plainly no violation of this provision. Plaintiffs’ other constitutional arguments were not presented to the Tax Court and are not discussed in its opinions. Consequently, those arguments are not properly before us. Presbyterian Homes v. Div. of Tax Appeals, 55 N.J. 275, 289, 261 A.2d 143 (1970). In any event, all of plaintiffs’ constitutional arguments are grounded on the premise that the pipelines were unfairly assessed, thereby imposing *645 a disparate tax burden upon plaintiffs compared with other taxpayers. However, this premise was properly rejected by the Tax Court. Since there was no discrimination against plaintiffs, intentional or otherwise, there is no foundation for any constitutional attack upon the valuations of the pipelines.
We emphasize that the Tax Court only concluded that plaintiffs “in valuing [their] properties on a regulated basis, [had] not borne [their] burden of establishing the value of [their] property for New Jersey real property tax assessment purposes,” 7 N.J.Tax at 527, and consequently plaintiffs had failed to bear their burden of proving that the 1983 assessments on their pipelines were incorrect. The Tax Court’s opinions do not approve the method of valuation used by Bernards’ expert; indeed, they expressly reject his opinion as to the appropriate allowance for depreciation. Therefore, our affirmance simply reflects our agreement with the Tax Court that plaintiffs failed to establish the value of their pipelines and hence failed to overcome the presumption of reasonableness accorded the assessor’s valuations. See Pantasote Co. v. City of Passaic, 100 N.J. 408, 412-413, 495 A.2d 1308 (1985).
We are unable to accept the dissent’s conclusion that because there are inadequacies in the assessment methodology used by Bernards’ expert, the matter should be remanded to the Tax Court to afford plaintiffs another opportunity to prove the value of their pipelines by an entirely different methodology than the ones advocated by their experts at trial. Such a disposition would be inconsistent with the principle that “... absent any strong indication arising from the evidence properly before the Tax Court that the quantum of the assessment was far wide of the mark of true value, inadequacies in the municipality’s evidence or deficiencies in the assessment methodology will not impugn the presumption of validity that attaches to the original assessment.” Pantasote Co. v. City of Passaic, supra, 100 N.J. at 414-415, 495 A.2d 1308. While the dissent properly encourages the development of a better methodology for valuing gas pipelines, we could not accept such a methodology without supporting expert testimony. Therefore, the *646 remand urged by the dissent would require a complete retrial of the case, without any advance assurance that this would result in a more satisfactory method of valuing plaintiffs’ pipelines than the ones presented at the original trial. To prolong this litigation by affording plaintiffs a second opportunity to establish valuations of their pipelines different from Bernards’ valuations would be inconsistent with the policy of requiring any challenges to tax assessments to be expeditiously pursued in order to assure stability in the finances of local government. See F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 424-425, 495 A.2d 1313 (1985); Suburban Dep’t Stores v. East Orange, 47 N.J.Super. 472, 482, 136 A.2d 280 (App.Div. 1957). We add that nothing in the Tax Court’s opinion precludes consideration of other valuation methodologies with respect to the pipelines of other taxpayers or future assessments of plaintiffs’ pipelines in Bernards.
Finally, we reiterate the view expressed in 1971 both by this court and by the Supreme Court that it would be desirable for the Legislature to address the subject of the valuation for tax purposes of gas transmission pipelines.
Affirmed.

The quotations in this opinion are solely to our earlier opinion in Transcontinental and not to our nearly identical opinion in Texas Eastern.

Judge Lasser’s opinion in the Transcontinental case is reported at 7 N.J.Tax 508 (Tax Ct.1985). His opinion in the Algonquin case, which is substantially similar, is unpublished. All cites in this opinion are to the reported opinion.